UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Phyllis Gorham,
    Claimant

                             Case No. 18-cv-853-SM
    v.                      Opinion No. 2019 DNH 124

Andrew Saul, Commissioner,
Social Security Administration,
    Defendant

**O R D E R**

Pursuant to 42 U.S.C. § 405(g), claimant, Phyllis Gorham, moves to reverse the Commissioner's decision denying her application for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 423, and Supplemental Security Income Benefits under Title XVI of the Act, 42 U.S.C. §§ 1381-1383(c). The Commissioner objects and moves for an order affirming the decision.

For the reasons discussed below, claimant's motion is necessarily denied, and the Commissioner's motion is granted.

**Background**

I.   **Factual Background**

A detailed factual background can be found in the Commissioner's statement of facts (document no. 9), and Gorham's

statement of facts (document no. 7).  A brief summary is provided, with an emphasis on Gorham's mental health history, because her appeal of the ALJ's decision is focused on that history.

Gorham was born in 1966. Prior to 2008, she primarily worked as a truck driver, driving 18-wheeler tractor trailers. She is five feet, five inches tall, and weighs approximately 238 pounds.  In her application for benefits, Gorham stated that the following physical or mental conditions limit her ability to work: severe depression; chronic back pain; "tumor in cervical wall;" bipolar disorder; "sleep insomnia;" irritable bowel syndrome; "[w]orsened-[c]hronic [p]ain in neck and shoulders, [c]hest cavity;" "cells in [four] different areas;"[1] and "blood in head."[2]  Admin. Rec. at 245.

Gorham has an extensive history of treatment for her mental health conditions with Goodwin Community Health.  She is treated

---

[1]    Claimant subsequently clarified that she was being followed medically for potential cancer cells in her esophagus, uterus, left lung and colon.  Admin. Rec. at 122.

[2]    Claimant subsequently clarified that, following an episode where she blacked out due to loss of oxygen, she experienced severe nose bleeds.  Admin. Rec. at 122.  She added that this condition requires medication to keep her nasal passages from becoming too dry.  Id.

by Rima Sutton, L.I.C.S.W, and psychiatric nurse practitioner Lisa von Braun.  The Goodwin Community Health treatment records indicate that Gorham has been diagnosed with depression, and anxiety, as well as post-traumatic stress disorder.

Treatment records from other providers during the relevant time period generally indicate normal mental status exams.  <u>See, e.g</u>., Admin. Rec. at 538 (Mar. 9, 2017, office visit with physician assistant Gertrude Trumpy for "health maintenance;" "Mood and affect: no depression, anxiety, or agitation"); Admin. Rec. at 549 (Jan. 25, 2017, office visit with Trumpy for "chronic pain and conjunctivitis;" "Mood and affect: no depression, anxiety, or agitation"); Admin. Rec. at 555 (Jan. 4, 2017, office visit with Trumpy; stating same); Admin. Rec. at 561 (Dec. 21, 2016, office visit with Trumpy; same); Admin. Rec. at 574 (Oct. 26, 2016, office visit with Trumpy; same); Admin. Rec. at 600 (June 29, 2016, office visit with Trumpy; same); Admin. Rec. at 683 (Mar. 1, 2017, office visit with Dr. Allen Carignan, PainCare Centers Somersworth, noting "normal" judgment, insight, mood and affect; "appropriate" thought content, and "cooperative" attitude);  Admin. Rec. at 689 (Mar. 15, 2017, office visit with Dr. Carignan, noting same); Admin. Rec. at 697 (Apr. 12, 2017, office visit with Dr. Carignan; same); Admin. Rec. at 764 (Jul. 11, 2017, office visit with Dr.

Carignan; same); Admin. Rec. at 981 (Feb. 1, 2017, office visit with Dr. Robert Ruben, Atlantic Digestive; noting "normal mood and affect," "cooperative;" "[n]ormal attention span and concentration").

On August 1, 2017, consultative examiner Dr. Robert Su Prescott conducted a comprehensive psychological examination of Gorham.  Admin. Rec. at 751 – 756.  Dr. Prescott observed that Gorham appeared "to be in emotional distress.  She was talkative and made various complaints about people.  She did have a bit of an irritable edge and swore some.  She was tearful on occasion." Admin. Rec. at 751.  Based on his evaluation, Dr. Prescott opined:

- Gorham was capable of understanding and remembering basic work instructions, and making adequate judgments on fairly straightforward work-related decisions;
- Gorham was able to focus attention on basic work activities only for very short periods of time, and would not be expected to effectively keep up pace or complete tasks in a timely manner at a typical work setting;
- Gorham did not appear able to interact effectively or without considerable distress with others on the job on a consistent, sustained basis;
- Gorham did not appear presently capable of regulating her emotions, controlling her behavior, or maintaining well-being at a typical work setting on a consistent basis, and would not be expected to do well with demands placed on her or unexpected changes in routine.

Admin. Rec. at 755-756.

On August 15, 2017, after reviewing claimant's medical records (including Dr. Prescott's report), state agency medical consultant, Dr. Michael Schneider, assessed claimant's mental impairments. Dr. Schneider opined that claimant was moderately limited with respect to memory, understanding and concentration, but could understand, remember and carry out short, simple tasks. Admin. Rec. at 156-157. He further opined that claimant had moderate social limitations, but would be able to interact in a work setting where she avoided the general public, in a somewhat isolated workstation. Finally, Dr. Schneider opined that Gorham had moderate adaptive limitations, but could adapt to simple changes in the work setting. With respect to Dr. Prescott's report, Dr. Schneider wrote: "Dr. Prescott's opinions of inability in some areas is inconsistent with the evidence, his own observations and exam, so they are not given any weight." Admin. Rec. at 157.

Finally, by letter dated September 9, 2017, claimant's treating psychiatric nurse practitioner, von Braun, opined that, due to the functional limitations imposed by her diagnosis, Gorham met the "definition of disability under the Americans with Disabilities Act, the Fair Housing Act, and the Rehabilitation Act of 1973." Admin. Rec. at 758. Von Braun further wrote, "Due to her disability, Phyllis has certain

limitations regarding social interaction/coping with stress/anxiety." Id.


## II.  **Procedural History**

On March 29, 2017, and August 12, 2017, claimant filed applications for Supplemental Security Income and Disability Insurance Benefits, respectively.  She alleged that she was disabled and had been unable to work since October 1, 2008. Those applications were denied on August 16, 2017, and claimant requested a hearing before an Administrative Law Judge ("ALJ").


On January 31, 2018, claimant, her attorney, and an impartial vocational expert appeared before an ALJ, who considered claimant's application de novo.  At the hearing, the claimant amended her alleged onset date to April 22, 2016.  On February 27, 2018, the ALJ issued his written decision, concluding that claimant was not disabled, as that term is defined in the Act, through the date of his decision.  Claimant then requested review by the Appeals Council.  The Appeals Council denied claimant's request for review, finding no reason to review the ALJ's decision.  Accordingly, the ALJ's denial of claimant's applications for benefits became the final decision of the Commissioner, subject to judicial review.  Subsequently,

claimant filed a timely action in this court, asserting that the ALJ's decision is not supported by substantial evidence.

Claimant then filed a "Motion to Reverse Decision of the Commissioner" (document no. 6). In response, the Commissioner filed a "Motion for an Order Affirming the Decision of the Commissioner" (document no. 8). Those motions are pending.

### III. **The ALJ's Findings**

In concluding that claimant was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. §§ 404.1520 and 416.920. See generally Barnhart v. Thomas, 540 U.S. 20, 24 (2003). Accordingly, he first determined that claimant had not been engaged in substantial gainful employment since her alleged onset of disability, April 22, 2016. Admin Rec. at 20. He next concluded that claimant suffers from the following severe impairments: "degenerative disc disease of the lumbar spine, obstructive sleep apnea, depression and anxiety." Admin. Rec. at 22-24. The ALJ also considered claimant's diagnoses of asthma, chronic obstructive pulmonary disease, cataplexy, degenerative disc disease in her cervical spine, gastro-esophageal reflux disease ("GERD"), and gastritis, and determined that all were non-severe impairments. Finally, the

7

ALJ considered claimant's history of thyroid cancer, hypothyroidism, Hepatitis B, adenocarcinoma, and leukocytosis, and found those conditions to be non-severe as well. The ALJ then determined that claimant's impairments, whether considered alone or in combination, did not meet or medically equal one of the impairments listed in Part 404, Subpart P, Appendix 1 of the regulations. Id.[3]

Next, the ALJ concluded that claimant retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except she can occasionally climb, and occasionally balance, stoop, kneel, crouch and crawl. She is limited to occasional exposure to fumes, odors, dusts, gases, and poorly ventilated areas. The claimant is limited to short, simple tasks and cannot tolerate any work with the general public. The claimant is limited to a work setting with no tandem or team-oriented tasks. The claimant is limited to no more than occasional changes in a routine work setting, such as hours of work, breaks, lunch periods, and work assignments.

---

[3] The ALJ specifically considered Listings 12.04 and 12.06, concerning depression and anxiety disorders. He found that Gorham had moderate limitations in understanding, remembering, or applying information; moderate limitation in interacting with others; moderate limitation with regard to concentrating, persisting, or maintaining pace; and moderate limitation in adapting or managing oneself.

The ALJ then determined that the "paragraph B" criteria were not satisfied because the claimant's mental limitations did not amount to two "marked" limitations or one "extreme" limitation. The ALJ further determined that the "paragraph C" criteria were not satisfied.

Admin. Rec. at 26. In light of those restrictions, and based on the testimony of the vocational expert, the ALJ concluded that claimant was not capable of performing her past relevant work. Id. at 30.

Finally, the ALJ considered whether there were any jobs in the national economy that claimant might perform. Relying on the testimony of the vocational expert, the ALJ concluded that "the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Id. at 31. The ALJ then concluded that claimant was not "disabled," as that term is defined in the Act, through the date of his decision.

## Standard of Review

I. "Substantial Evidence" and Deferential Review

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Factual findings and credibility determinations made by the Commissioner are conclusive if supported by substantial evidence. See 42 U.S.C. §§ 405(g), 1383(c)(3). See also Ortiz v. Secretary of Health & Human

Services, 955 F.2d 765, 769 (1st Cir. 1991). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Importantly, it is something less than a preponderance of the evidence, so the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966). See also Richardson v. Perales, 402 U.S. 389, 401 (1971).

This court's review of the ALJ's decision is, therefore, both limited and deferential. The court is not empowered to consider claimant's application de novo, nor may it undertake an independent assessment of whether she is disabled under the Act. Rather, the court's inquiry is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). Provided the ALJ's findings are properly supported by substantial evidence, the court must sustain those findings even when there may also be substantial evidence supporting the contrary position. Such is the nature of judicial review of disability benefit determinations. See, e.g., Tsarelka v. Secretary of Health & Human Services, 842 F.2d

529, 535 (1st Cir. 1988); Rodriguez v. Secretary of Health & Human Services, 647 F.2d 218, 222 (1st Cir. 1981).


II.  The Parties' Respective Burdens

An individual seeking SSI and/or DIB benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  See also 42 U.S.C. § 1382c(a)(3).  The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment.  See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that burden, the claimant must prove, by a preponderance of the evidence, that her impairment prevents her from performing her former type of work.  See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985); Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982).  If the claimant demonstrates an inability to perform her previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that she can perform, in light of her age, education, and prior work experience.  See Vazquez v. Secretary of Health & Human

Services, 683 F.2d 1, 2 (1st Cir. 1982).  See also 20 C.F.R. §§ 404.1512(f) and 416.912(f).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability, as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience.  See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 6 (1st Cir. 1982).  Ultimately, a claimant is disabled only if her:

> physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.

42 U.S.C. § 423(d)(2)(A).  See also 42 U.S.C. § 1382c(a)(3)(B).

With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm the decision.

**Discussion**

In support of her motion to reverse the ALJ's decision, claimant raises the following errors: (1) the ALJ erred in his treatment of the medical opinion evidence, specifically the opinions of Dr. Robert Prescott and Lisa Von Braun; (2) the ALJ erred by failing to find that claimant's condition met the criteria of Listings 12.04 and 12.06; and (3) the ALJ erred by failing to appropriately assess claimant's testimony and activities.

I.   The ALJ Properly Evaluated the Medical Opinion Evidence.

Gorham first takes issue with the ALJ's treatment of the medical opinion evidence. Pursuant to 20 C.F.R. §§ 404.1520c(a) and 416.920c(c),[4] an ALJ must consider and assess medical opinions based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) the specialization of the medical source; and (5) other factors "that tend to support of contradict a medical opinion," including the source's familiarity with other evidence in the claim, or understanding of SSA policies and evidentiary requirements.

-----

[4]   20 C.F.R. §§ 404.1520c(a) and 416.920c(c) apply to all claims filed on or after March 27, 2017. Gorham's claims were filed on April 12, 2017, and April 28, 2017.

A. Dr. Prescott's Opinion

Gorham contends that the ALJ erred in his evaluation of the
opinion of consultative examiner, Dr. Prescott. She argues that
the ALJ "overlooked the breadth of Dr. Prescott's findings," and
undertook his own analysis of the data in Dr. Prescott's report
as well as the notes of other providers.  Claimant's arguments
concerning the ALJ's treatment of Dr. Prescott's opinion are not
persuasive.

Concerning Dr. Prescott's opinion, the ALJ wrote:

I give this opinion little weight because it is
inconsistent with the claimant's longitudinal
treatment record.  Dr. Prescott's findings reflect the
claimant's subjective complaints and his one-time
evaluation, and his assessment does not incorporate
the claimant's overall presentation.  As discussed
above, the claimant's mental health treatment notes
indicate decreased anxiety and depression symptoms,
and reports that she was doing well, making friends in
the building, and reconciling with her ex-husband
(e.g., Ex. C16F/1, 11, 21). She also described better
sleep, going out with family members, and did not
complain of any memory or concentration issues to
mental health providers (e.g., Ex. C16F/9, 10, 28.
While the record supports some limitations based on
the claimant's mental impairments, I find that the
record does not support limitations to the extent
assessed by Dr. Prescott.

Admin. Rec. at 29.

The ALJ properly evaluated Dr. Prescott's opinion based on
the factors set forth in § 404.1520c(b) and (d), including

14

supportability and consistency.  See Revisions to Rules

Regarding the Evaluation of Medical Evidence, 82 FR 5844-01

(Jan. 18, 2017) ("the two most important factors for determining

the persuasiveness of medical opinions are consistency and

supportability. The extent to which a medical source's opinion

is supported by relevant objective medical evidence and the

source's supporting explanation — supportability — and the

extent to which the opinion is consistent with the evidence from

other medical sources and nonmedical sources . . . are also more

objective measures that will foster the fairness and efficiency

in our administrative process that these rules are designed to

ensure.").  The ALJ also thoroughly explained his reasons for

discounting Dr. Prescott's opinion, and included extensive

citations to Gorham's medical treatment records.   Thus,

claimant's criticisms of the ALJ's treatment of Dr. Prescott's

opinion do not warrant remand.


        B. Von Braun's Opinion

    Gorham also argues that the ALJ erred by failing to credit

the opinion of Von Braun.  Claimant concedes that Von Braun

opined on an ultimate issue, but argues that it was improper to

give no weight to her opinion because the other statutes

referenced therein "do speak to Ms. Gorham's ultimate

disability, and should have been considered by the ALJ."  Pl.'s

Mot. to Reverse at 4-5.  Claimant further argues that Von
Braun's opinion should have been given controlling weight,
because she is a treating provider.

That argument is also unpersuasive.  First, von Braun did
not opine on Gorham's specific limitations.  Instead, she simply
opined that Gorham is "disabled."  Pursuant to 20 C.F.R. §
404.1502b, a "[s]tatement that [claimant is or is not] disabled"
is considered a "[s]tatement on issues reserved to the
Commissioner," and an ALJ is therefore not required to "provide
any analysis about how [he] considered such evidence in [his]
determination or decision."  20 C.F.R. § 404.1520b.  See also
Ledoux v. Acting Comm'r, Soc. Sec. Admin., No. 17-CV-707-JD,
2018 WL 2932732, at *5 (D.N.H. June 12, 2018) ("Opinions even
from medical sources that a claimant is unable to work are not
entitled to any particular significance because that issue is
reserved to the Commissioner.") (citing 20 C.F.R. § 404.1527(d))
(additional citations omitted).

Second, pursuant to the revised regulations, the "treating
source rule" upon which claimant relies in support of her
argument is no longer in effect.  See 20 C.F.R. § 404.1520c ("We
will not defer or give any specific evidentiary weight,
including controlling weight, to any medical opinion(s) . . .

including those from your medical sources."). Under current regulations, a treating source's opinion is entitled to no special deference.

In sum, for all the above reasons, the ALJ did not err in his treatment of the medical opinion evidence.

II.  The ALJ Properly Evaluated the Severity of Claimant's Mental Impairments.

Gorham contends that the ALJ failed to properly evaluate the severity of her mental impairments. She argues that her anxiety disorder and depression satisfy the requirements under Part B, Listings 12.04 and 12.06. Gorham contends that she meets those requirements because she has "marked limitation in her interactions with others[,] and in adapting and managing herself." Pl.'s Mem. in Support of Mot. to Reverse at 5.

According to Gorham, her marked limitation in interacting with others is established by evidence in the record that she is unable to be in areas with large groups of people; that she becomes easily agitated when interacting with others; that she frequently becomes tearful at medical appointments; and that she frequently requires coaching for her interpersonal relationships during counseling appointments. Gorham argues that the ALJ

improperly relied on Gorham's interactions with family as evidence that her impairment is not severe because "[c]ommon sense would suggest that individuals with severe impairment may rely on family[,] and have a largely different relationship with familiar family members than they would with members of the general public." Id. at 6.

The Commissioner responds that the record evidence upon which Gorham relies is all based on her own subjective reports. And, says the Commissioner, that evidence provides better support for the ALJ's finding of "moderate" limitations, which means that the claimant's ability to function independently, appropriately, effectively, and on a sustained basis is only "fair." Def.'s Mem. in Support of Mot. to Affirm at 12 (citing 20 C.F.R. Part 404, Subpt. P, App. 1 § 12.00(F)(2)(c)).

To be sure, there is evidence in the record that supports Gorham's position. However, there is also substantial evidence — much of it cited by the ALJ in his decision — that supports the ALJ's determination that claimant experiences only moderate difficulties in interacting with others. Indeed, the ALJ's finding is well-supported, not only by the evidence he cites in his decision, but by additional record evidence as well. See, e.g., Admin. Rec. at 470, 476, 532, 533, 564, 570, 641, 648,

752, 995-996.  Evidence related to claimant's relationship with
family members does not alter the court's conclusion:  that
evidence is also relevant, though of course not dispositive, to
Gorham's ability to interact, successfully with others, albeit
with moderate difficulty.  Cf., Deane v. Colvin, 247 F. Supp. 3d
152, 169 (D. Mass. 2017) ("the claimant lived together with her
fiancé at the time of the ALJ hearing, which again demonstrates
the ability, even if limited, to connect and function with
others.").  See also Rodriguez v. Colvin, No. CA 14-184 ML, 2015
WL 3631697, at *14 (D.R.I. June 10, 2015) (upholding ALJ's
reliance on claimant's "circle of family and friends" in support
of ALJ's finding of "moderate difficulties in social
functioning").

    With respect to her ability to manage herself, Gorham
argues that her marked limitation is evidenced by her reliance
on others to perform routine tasks, such as shopping for
groceries, and that she requires counseling and advice from
medical providers on issues "that a typical woman of her age
. . . would likely be able to manage on her own."  Id.  As with
Gorham's ability to interact with others, there is some evidence
in the record that supports her argument.  However, there is
also substantial evidence that supports the ALJ's finding that
claimant's limitations in this area are only moderate, including

the evidence cited by the ALJ in his decision.  See Admin. Rec.
at 25.  As the ALJ noted, Gorham stated that she can prepare
some simple meals and perform light cleaning, and manages her
own finances.  Admin. Rec. at 262-263.  Claimant's treatment
records from Goodwin Community Health regularly note that
claimant is well-groomed.  See, e.g., id. at 533, 545, 576, 595.

As previously mentioned, there is some evidence in the
record that supports claimant's arguments.  However, the
existence of such evidence "does not extinguish the substantial
evidence supporting the ALJ's findings." Gillen v. Colvin, No.
16-CV-59-JL, 2017 WL 775785, at *7 (D.N.H. Feb. 28, 2017)
(quotation omitted).  In essence, Gorham asks the court to
reweigh the evidence before the ALJ and come to a different
conclusion.  However, "the resolution of conflicts in the
evidence is for the Secretary, not the courts." Ortiz, 955 F.2d
at 769.  Here, the ALJ's findings are well-supported by the
record, and for that reason, claimant's challenge cannot
succeed.  See Wilson v. Colvin, 17 F. Supp. 3d 128, 137 (D.N.H.
2014) ("The ALJ's findings of fact are accorded deference as
long as they are supported by substantial evidence.") (citations
omitted).

Finally, claimant's argument that the ALJ failed to analyze whether Gorham meets the criteria of Section 12.06 lacks merit. Both Listing 12.04 and 12.06 have three paragraphs, designated A, B. and C. See 20 C.F.R. Part 404, Subpt. P, App. 1, §§ 12.04, 12.06. A mental disorder must satisfy the requirements of both paragraphs A and B, or the requirements of both paragraphs A and C. Id. While Listings 12.04 and 12.06 have separate paragraph A criteria, the criteria under paragraphs B and C are identical. And, as the Commissioner correctly states, the ALJ properly analyzed the criteria under paragraphs B and C for both Listings 12.04 and 12.06. See Admin. Rec. at 24-26.

In sum, substantial evidence supports the ALJ's determination that claimant's mental impairments did not meet or medically equal listings 12.04 and 12.06.

III. Substantial Evidence Supports the Mental Limitations in the RFC.

Claimant's final argument is somewhat undeveloped, but she seems to contend that the ALJ erred by failing to properly analyze the quality of her activities, along with the sustainability of such activities over time, instead relying on "isolated references in the record" in support of his determination, without providing context. Pl.'s Mem. in Support

of Mot. to Reverse at 7.  That argument lacks merit, as the
ALJ's opinion is well-supported by substantial evidence in the
record.  Nothing more need be said.


## Conclusion

This court's review of the ALJ's decision is both limited
and deferential.  The court is not empowered to consider
claimant's application de novo, nor may it undertake an
independent assessment of whether she is disabled under the Act.
Rather, the court's inquiry is "limited to determining whether
the ALJ deployed the proper legal standards and found facts upon
the proper quantum of evidence."  Nguyen v. Chater, 172 F.3d 31,
35 (1st Cir. 1999).  Provided the ALJ's findings are properly
supported by substantial evidence — as they are in this case —
the court must sustain those findings even when there may also
be substantial evidence supporting the contrary position.  Such
is the nature of judicial review of disability benefit
determinations.  See, e.g., Tsarelka v. Secretary of Health &
Human Services, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must
uphold the [Commissioner's] conclusion, even if the record
arguably could justify a different conclusion, so long as it is
supported by substantial evidence."); Rodriguez v. Secretary of
Health & Human Services, 647 F.2d 218, 222 (1st Cir. 1981) ("We
must uphold the [Commissioner's] findings in this case if a

reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.").

Having carefully reviewed the administrative record and the arguments advanced by both the Commissioner and claimant, the court necessarily concludes that there is substantial evidence in the record to support the ALJ's determination that claimant was not "disabled," as that term is used in the Act, at any time prior to the date of her decision.

For the foregoing reasons, as well as those set forth in the Commissioner's legal memorandum, claimant's motion to reverse the decision of the Commissioner (document no. 6) is denied, and the Commissioner's motion to affirm her decision (document no. 8) is granted. The Clerk of the Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

August 6, 2019

cc:  Bradley M. Lown, Esq.
     Candace H. Lawrence, Esq.